UNOCAL CORPORATION and Union
Oil Company of California

v.

MESA PETROLEUM CO., Mesa Partners
II, Mesa Asset Co., Mesa Eastern, Inc.,
CY–41, Inc., Jack–41 Inc., T. Boone
Pickens, Jr., Cyril Wagner, Jr., and
Jack E. Brown.

Civ. A. No. 85–1004 L.

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

May 9, 1985.

Randall W. Wilson, Terrell W. Oxford, William H. White, Thomas M. Rollins, and Thomas W. Paterson, Susman, Godfrey & McGowan, Houston, Texas; Daniel K. Mayers, James S. Campbell, and David Westin, Wilmer, Cutler & Pickering, Washington, D.C.; Jasmina Theodore, Union Oil Co., Los Angeles, California; Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, Louisiana; David R. Frohn, Camp, Carmouche, Barsh, Hunter, Gray, Hoffman & Gill, Lafayette, Louisiana, for plaintiffs.

William R. Burke, Jr. and Theodore F. Weiss, Jr., Baker & Botts, Houston, Texas; William C. Pelster, Michael L. Weiner, and William J. Guzick, Skadden, Arps, Slate, Meager & Flom, New York City; Michael R. Mangham and Louis R. Davis, Broadhurst, Brook, Mangham & Hardy, Lafayette, Louisiana, for defendants.

MEMORANDUM RULING

DUHE, District Judge.

On April 11, 1985, (with amendments on April 12 and April 18, 1985), plaintiff's, Unocal Corporation and Union Oil Company of California (hereinafter called "Unocal"), filed this proceeding against Mesa Petroleum Company, Mesa Partners II, Mesa Asset Co., Mesa Eastern, Inc., Cy–41, Inc., Jack–41, Inc., T. Boone Pickens, Jr., Cyril Wagner, Jr. and Jack E. Brown (hereinafter referred to as "Mesa"), seeking damages and injunctive relief preventing the takeover of Unocal by Mesa and preventing Mesa from voting its shares of Unocal at the Unocal shareholder's meeting to be held May 13, 1985. Unocal asserts

that Mesa's attempt to take over Unocal and its previous attempts to take over other major oil companies constitute an unlawful conspiracy to restrain trade in domestic oil and gas leasing and exploration on the Outer Continental Shelf in the Gulf of Mexico in violation of § 1 and 2 of the Sherman Act, 15 U.S.C. § 1, *et seq.*

Basically Unocal contends that defendants have conspired together to reduce competition by "restructuring" (greatly increase the debt to equity ratio of) numerous major oil companies, including Unocal, by attempting takeover. The result of the increased debt, according to plaintiffs, is to restrict the working capital available for purchasing of leases and for exploration thereby reducing competition for new leases and reducing funds available to develop existing leases on the Outer Continental Shelf of the Gulf of Mexico where both Unocal, Mesa and other targets of Mesa takeover attempts are active.

Unocal seeks injunctive relief pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26 which provides in pertinent part:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws ... when, and under the same conditions and principals as injunctive relief against threatened conduct that will cause loss or damage is granted by the courts of equity...."

Preliminary injunction begs extraordinary and drastic relief. It exists to protect plaintiff from irreparable injury and to preserve this Court's power to render a meaningful decision after trial on the merits, but only when plaintiff clearly establishes by a preponderance of the evidence that the following prerequisites exist:

1. A substantial likelihood that plaintiff will prevail on the merits,

2. A substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted,

3. That the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and

4. That granting the preliminary injunction will not disserve the public interest. *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974).

Having carefully considered the law, the evidence submitted both by declaration and at the hearing and the briefs and oral argument of counsel, this Court remains unconvinced that plaintiff has established a substantial likelihood that it will prevail on the merits and a substantial threat that it will suffer irreparable injury unless the injunction is granted and, therefore, has denied plaintiff's request for a preliminary injunction without consideration of the two remaining prerequisites.

## LIKELIHOOD OF SUCCESS

Has Unocal shown a substantial likelihood that it will establish that Mesa's activity is an antitrust violation? Put another way, has Unocal shown that it is substantially likely to prove that Mesa seeks to lessen leasing and exploration competition on the Outer Continental Shelf in the Gulf of Mexico? Conceding to plaintiff, for the sake of brevity, all other issues involved in the likelihood of success question, this Court remains unconvinced on this point.

There is no doubt that the mergers which have recently occurred in the petrochemical industry have increased the resultant corporate entities' debt substantially. There is likewise no doubt that increased debt requires a greater percentage of operating revenue be dedicated to debt service and that success in borrowing funds for leasing and exploration is not likely. Unocal, therefore, reasons that less money will be spent for leasing and exploration and, therefore, competition will be lessened. That may happen, but it likewise may not.

Unocal's reasoning ignores market factors and would explain all changes in leasing and development expenditures on the Outer Continental Shelf in the Gulf of Mexico in recent years in terms of "re-

structure". But the declining world price of oil and gas, excess world supplies of both, the dwindling number of low risk drilling prospects available, and the overall economic down-turn in this country and in most of the industrialized countries of the world all play a part. In fact, Exhibits C-2 and C-3 attached to the Keegan declaration submitted by plaintiff show substantial variations in the amount of funds spent on Outer Continental Shelf bids from year to year within the same companies long before Mesa began its takeover campaigns. Obviously market factors and management decisions alone are responsible for those variances.

While mergers obviously reduce the number of competitors that is not *per se* an antitrust violation.

Neither has there been any showing that companies, "restructured" or otherwise, could not shift the emphasis of their operations or take other measures which would keep the Outer Continental Shelf leasing and development budgets at whatever level the management of the company deemed appropriate in light of market conditions without regard to the increased debt. In short, there are too many other possible explanations that have nothing to do with the activities of Mesa, anti-competitive or not.

Additionally, even if the statistical data submitted by Unocal to show a reduction in Outer Continental Shelf expenditures by "restructured companies" be conceded to be solely as a result of the "restructuring" and that be conceded to be brought about entirely by anti-competitive activities of Mesa, there is no way to quantify the effect thereof on the industry as a whole. Indeed the effect would appear to be, at least at this point, inconsequential.

Unocal additionally argues that a number of mergers and other "restructuring" efforts which have been undertaken by companies in the industry which were not targets of Mesa takeover attempts were nonetheless brought about by the implied threat that such takeover attempts were possible. But again to attribute the cause of these mergers and other efforts to Mesa alone is to ignore completely the market factors at work.

■ The Court is aware that an agreement or combination, the purpose of which is to restrain trade, is condemned by the Sherman Act whether the conspirators in fact succeed in their purpose or not. *U.S. v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). In the case at bar, however, the extent to which the combination of defendants may or may not succeed in lessening competition is significant because plaintiff is attempting to use that evidence as evidence of the purpose of the agreement or combination of defendants. There is direct evidence that the defendants have combined together and agreed to acquire Unocal and have taken steps to accomplish their purpose just as they did with other companies on previous occasions. But plaintiff must also prove that the purpose (or the effect) of the combination is to restrain trade, otherwise, the combination is not violative of the Sherman Act. Plaintiff attempts to do this by introducing evidence tending to show that the effect of the attempted takeovers has been to reduce competition. It is there that the success or failure of the combination in restraining trade and lessening competition becomes significant. It is in establishing this fact that plaintiffs' evidence fails. Plaintiff has failed to prove that the combination or agreement among the defendants is either intended to be in restraint of trade and competition or in fact accomplishes a restraint of trade and competition.

The evidence clearly shows that Mr. Pickens has fixed and firm notions concerning what is good for the industry and that Mesa has been instrumental in bringing such changes about. But the evidence does not convince this Court that Mesa's activity is an antitrust violation. Mr. Pickens may not be the oil company shareholders' champion, but neither is he shown to be an economic terrorist as some have suggested.

## IRREPARABLE INJURY

What irreparable harm will befall Unocal (as opposed to Unocal's management) as a result of Mesa's actions if the preliminary injunction is not issued?

The shareholders of Unocal will decide to sell or not. If the takeover attempt is unsuccessful, the status quo will be maintained, Mesa will be the largest single stockholder of Unocal and the corporation will have incurred some additional debt in defending itself against the takeover attempt. Even Unocal does not contend that this is an irreparable injury.

If the takeover succeeds, Unocal will be owned and managed by Mesa and will have substantially increased debt. Unocal argues that the substantial increase in debt will reduce funds available for exploration and leasing and that some leases which it now holds (in one of the largest, if not the largest inventories of Outer Continental Shelf leases of any major company) may be lost and its ability to replace its reserves may be impaired. If so, this will result in the gradual liquidation of the company since any company with depletable assets slowly puts itself out of business if it does not regularly replace those assets. But this again is largely speculation. Unocal may well maintain its relative competitive position on the Outer Continental Shelf in the Gulf of Mexico depending upon what actions its competitors take. They may likewise cut back their leasing and exploration activity in response to market factors.

New management may run Unocal more efficiently than it is run by the present management. It may become a more efficient money earner for its shareholders than it is now. Whether it will or will not is entirely speculative.

Unocal contends that it will lose some of its lease inventory, especially its deep water leases because if its operating funds are cut back, it will not be able to drill those leases within the primary term and will, therefore, forfeit them back to the government and lose its investment therein. This assumes that Unocal would be unable to make farmout or joint operating agreements or joint venture agreements with other companies for the development of those leases. Whether it can or cannot is, at this point, entirely speculation. Unocal contends that it would not be able to do so because only it has the store of prior knowledge which establishes the value of those deep water leases. It points to the fact that it was the only bidder for those leases showing that other companies do not have the knowledge to establish the value for those tracts. Conceding that this is true does not resolve the problem. Unocal can make its store of information available just as it can make its leases available to potential partners, joint venturers or prospective purchasers. There is simply no showing that its leases will be lost as a result of Mesa's activity.

Additionally, even if it be assumed that the leases will be lost, whether this constitutes an irreparable harm depends upon whether or not those leases would have been productive if drilled. It may well be that Unocal would spend vast sums of money in an effort to develop those leases only to find that the leases were not productive. If so, to lose those leases at the current stage would minimize Unocal's losses and would therefore be a benefit rather than a detriment.

## CONCLUSION

■ Being of the firm opinion that Unocal has not carried the burden of proof placed upon it to establish its entitlement to a preliminary injunction, this Court feels compelled to deny the request.

The necessity to decide the issues presented at the earliest possible date has made it impossible for the Court to treat the issues presented in the detail and to the extent that it would like, therefore, the Court reserves the right to expand on the reasons herein given at a later date should it consider that advisable.